STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss                            CIVIL ACTION
                                        DOCKET NO. AP-11-38
                                        MAIN - KEN- 3/22/2012


FAMILIES UNITED OF
WASHINGTON COUNTY,
        Petitioner


v.                                      ORDER ON
                                        80C PETITION


COMMISSIONER, MAINE DEP'T OF
HEALTH AND HUMAN SERVICES,
        Respondent


        Petitioner Families United of Washington County appeals from the final decision

of the Department of Health and Human Services, which affirmed the award of a state

contract for family services in Penobscot and Piscataquis counties to a party other than

Petitioner. Note that in AP-11-39, Petitioner simultaneously appeals the award of a

similar contract to another party in Hancock and Washington counties. Although the two

appeals raise similar issues, they have not been consolidated and the Court issues separate

orders.


                              **Regulatory background**

        The contract in question here was the product of Maine's competitive bidding

process. Generally speaking, competitive bidding requires that contracts awarded by any

state agency go to the "best-value bidder," considering "the qualities of the goods or

1

services to be supplied, their conformity with the specifications, the purposes for which they are required, the date of delivery and the best interest of the State." 5 M.R.S.A. § 1825-B(7).

Pursuant to 5 M.R.S.A. § 1825-C, the Division of Purchases promulgates rules governing the award of contracts and appeal thereof. One such rule is that all contract decisions must be made through the competitive bidding process using Requests for Proposals (RFPs). 18-554 C.M.R. ch. 110, § 2(A). At a minimum, the RFP must include, "a clear definition (scope) of the project, [and] the evaluation criteria and relative scoring weights to be applied . . . ." *Id.* § 2(A)(i). The contract must be awarded "to the highest rated proposal which conforms to the requirements of the state as contained in the RFP." *Id.* § 3(A)(iv).

## Factual and procedural background

On September 28, 2010, the Department of Health and Human Services (the Department) issued RFPs in each of Maine's eight public health districts soliciting proposals for the implementation of family reunification programs. The objective of these programs is to return children in protective custody to their natural families as swiftly and safely as possible. (R. 8.)[1] The RFP in question is RFP # 201009774, seeking family reunification services for Penobscot and Piscataquis counties (District 6). In each of the eight districts, the Department assembled a team of three State employees to review the contracts. The District 6 Review Team consisted of three Department

---

[1] The administrative record consists of the transcript ("Tr.") and everything else arranged with continuous page numbers ("R.").

2

employees in the Office of Child and Family services, Jennifer Mosca (the team leader), Jean Leonard, and Blair Doucette. (Tr. 164-166, 248.)

The Review Team received seven total bids, including one from Petitioner Families United of Washington County (Families United). The Review Team scored the proposals pursuant to the RFP and selected a bid submitted by KidsPeace, mailing notice of its decision on February 23, 2011. (R. 476.) By letter of March 10, 2011, Mary Wegrzyyn, executive director at Families United, requested an appeal hearing. 18-554 C.M.R. ch. 120, § 2(2) (A person aggrieved by a contract award may request an administrative hearing to appeal the decision within 15 days of notification of the contract award.). (R. 478.)

On May 2 and 13, 2011, an Appeal Panel of three State workers convened and held an evidentiary hearing. On June 10, 2011, the Appeal Panel issued its final decision, which affirmed the award of the contract to KidsPeace. (R. 587.) On July 8, 2011, Families United filed the present appeal in this Court pursuant to M.R. Civ. P. 80C. KidsPeace entered the case as an intervener.

### Features of the RFP and the Review Team's evaluation process

Under the RFP, each proposal was to be scored based on a 100 point scale divided up between three principle categories of criteria: (1) "Organization Qualifications and Experience" was worth 25 points, (2) "Specifications of Work to be Performed" was worth 40 points, and (3) "Cost Proposal" was worth 35 points. (R. 26-27.) The RFP laid

3

out a limited description of each category,[2] but did not allot points for criteria within each category. Rather:

> **Scoring Process:** The review team will use a <u>consensus</u> approach to evaluate the bids. Members of the review team will not score the proposals individually but instead will arrive at a consensus as to assignment of points on each category of each proposal. However, the Cost section will be scored according to a mathematical formula described below.

(R. 27.)

Within the first two categories, it was up to the review teams to independently decide how to assign and weigh the available points. Claire Austin, who wrote the RFP, testified that some review teams devised their own weighted "sub-category" system that allotted points within the broader categories, while some did not. (Tr. 193-195.) Jennifer Mosca, team leader for the District 6 Review Team, testified that she and her team used such a weighted "sub-category" scoring system to review the proposals. (Tr. 269-272.) While review teams from other districts may have devised different approaches, the Review Team in District 6 appears to have consistently applied the same sub-category criteria to each of the seven bidders for RFP # 201009774.

The third category, cost, consisted of 35 total points. The lowest bidder automatically got 25 of these points, while the remaining bidders received a score prorated against that figure ("Proposals with higher bids will be awarded proportionally fewer points calculated in comparison with that lowest bid.").[3] (R. 27.) The remaining

---

[2] For instance, the category labeled "Organization Qualifications and Experience" includes "organizational and personnel qualifications, required credentials, operational site(s), experience with similar projects and service populations, references, etc." (R. 26.)

[3] The formula used was: (Lowest submitted cost ÷ cost of proposal being scored) x 25 = pro-rated score, so that a bidder's score dropped in proportion to the amount by which it exceeded the lowest bidder's score. (R. 27.)

4

10 points were used to score the "narrative material and supporting documentation." *Id.* Under this formula, KidsPeace automatically received 25 points for having the lowest bid, plus 7 points for narrative material and supporting documentation (32 total points). (R. 467.) Families United, meanwhile, received 20 points for its prorated score, plus 8 points for its narrative material and supporting documentation (28 total points). (R. 455.)

The RFP also contained detailed instructions to bidders on how to prepare their proposals, specifying questions to be answered and documents to be attached. The bidders were instructed, "only materials offered in the proposal, information provided through interviews (if any) and Department information of previous contract history will be criteria for award consideration." (R. 22.) Note that the RFP states, "[i]t is the responsibility of the bidder to provide all information requested in the RFP package at the time of submission. Failure to provide information requested in this RFP will, at the very least, result in a lower rating for the incomplete sections and may result in the proposal being disqualified for consideration." (R. 26.) However, "[t]he State, at its sole discretion, reserves the right to recognize and waive minor informalities and irregularities for proposals received in response to this RFP." (R. 22.)

Under this scoring rubric, KidsPeace won the contract with 93 points. Families United came in third with 75 points. (R. 453.)

Discussion

The final agency action subject to review here is the Appeal Panel's June 10, 2011 decision that affirmed the contract award to KidsPeace.[4] (R. 587.) Thus, we review that decision and reverse or modify only if it is in violation of constitutional or statutory provisions, in excess of the agency's statutory authority, made upon unlawful procedure, affected by bias or error of law, unsupported by substantial evidence on the whole record, or arbitrary or capricious or characterized by abuse of discretion. Families United raises the following issues in its appeal[5]:

I.     *The Review Team's use of "sub-category" criteria*

Families United first argues that the Review Team's use of sub-categories not contained in the RFP constituted flawed and unlawful procedure. (Pet. Br. 3-5.) Families United claims that it lacked notice and could not reasonably anticipate the standards by which it would be judged because the Review Team devised the standards and assigned weights themselves before evaluation.

It is true that a contract awarded through competitive bidding must go to the "highest rated proposal which conforms to the requirements . . . contained in the RFP." 18-554 C.M.R ch. 110, § 3(A)(iv). However, there is nothing in the rules to prevent a

---

[4] When an administrative body acts as both factfinder and decision maker, the Superior Court will review its decision directly. *FPL Energy Maine Hydro LLC v. Dep't of Envtl. Prot*, 2007 ME 97, ¶ 14, 926 A.2d 1197.

[5] KidsPeace argues as an initial matter that Families United's appeal was untimely at the administrative level and that it failed to establish the scope of issues on appeal. Families United had 15 days to request an appeal from the time of "notification of contract award." 18-554 C.M.R. ch. 120, § 2(2). Families United was notified of the award by letter of February 23, 2011, and it requested an administrative appeal by letter of March 10, 2011. (R. 478.) KidsPeace's theory is unclear, (KidsPeace Br. 7), but even if Families United received notification of the contract award on the same day it was mailed, February 23, its request of March 10 would fall exactly 15 days later. KidsPeace also argues that the letter of March 10, 2011, from Mary Wegrzyyn did not adequately identify the grievances raised in the appeal. 18-554 C.M.R. ch. 120, § 2(2) ("A written request for appeal hearing must contain at a minimum the specific nature of the grievance, including the Appeal Criteria. . . ."). KidsPeace does not, however, venture to explain what it considers to be missing from Ms. Wegrzyyn's four-page letter. Thus, the Court moves on to the merits of the appeal.

review team from internally articulating, for the sake of clarity and consistency, the elements that make up each requirement. Here, as the Appeal Panel found, the sub-categories corresponded to the general scoring categories and did not alter the overall criteria and weights contained in the RFP. (R. 591-592.)

To focus the issue more precisely, Families United does not seem to argue that the RFP's limited, three category scheme itself lacks a "clear definition . . . of . . . the evaluation criteria and relative scoring weights to be applied," as required by chapter 110, § 2(A)(i). Thus, Families United would presumably not object to the alternative, which would be the Review Team using no further criteria, or inconsistent criteria, to assign points for each category. The sub-category approach, in contrast, ensured consistent and methodical evaluation of each applicant. The fact that review teams in other health districts used different approaches is immaterial because these dealt with entirely separate contracts. Thus, the Court concludes that the sub-category approach, as affirmed by the Appeal Panel, did not constitute flawed and unlawful procedure, or any other infirmity.

II.    *The Review Team's composition – Bias and consideration of Families United's past contract performance*

The issue of the Review Team's composition really consists of two separate issues. First, Families United argues that the District 6 Review Team suffered from built-in bias based on the fact that at least two of its three members apparently had prior experiences working with Families United. (Pet. Br. 5-6; Tr. 73-74, 294-296.) Jeremy Ashfield of Families United testified that in fact all three members "know our agency and know the worst that we do and work with us." (Tr. 73.) He testified that he had past disagreements with these individuals and was "concerned about inherent bias that they might have in viewing [Families United's] proposal." *Id.* Other than this vague

7

reference to some unspecified tension, however, Families United submits no evidence of actual or structural bias. Thus, the Court concludes that the Review Team's composition was sound.

Second, Families United argues that the Review Team was impermissibly allowed to consider and rely on its members' work-related past impression of Families United to score the RFP. (Pet. Br. 7.) The Review Team did in fact deduct 2 points for Families United's "history of poor staff retention and extended periods of critical vacancies." (R. 528.) Families United maintains that this subjective element violated the RFP, which, again, stated, "only materials offered in the proposal, information provided through interviews (if any) and *Department* information of previous contract history will be criteria for award consideration." (R. 22) (emphasis added.) "In other words, the RFP dictated that only official Department evaluation history could be properly considered." (Pet. Br. 7.)

Families United offers no evidence to support its theory that "Department information" means strictly "official Department evaluation history." The Review Team members in question presumably encountered Families United in their capacities as Department personnel, and so a fair reading of the RFP would bring these experiences within the meaning of "Department information." As counsel for the Department points out, "[t]he consideration of a bidder's history in providing services is directly related to an assessment of a bidder's capability to deliver responsive services." (Resp. Br. 10.) Families United even acknowledged that staff retention has been an issue. (R. 115.) The Court, thus, defers to the Appeal Panel's finding of "no error" in the Review Team's consideration of this information. (R. 592.)

*III.* *Application of RFP criteria to KidsPeace – litigation disclosure and Rider G form*

As noted, the RFP contained detailed instructions to bidders on how to prepare their proposals, specifying questions to be answered and documents to be attached. Here, Families United challenges two of those items as they pertain to KidsPeace's proposal. First, the RFP required a "list of all current litigation in which the Bidder is named and a list of all closed cases in which Bidder paid the claimant either as part of a settlement or by decree." (R. 28.) To this, KidsPeace's proposal stated: "There have been no civil litigation matters in the past 12 months in which KidsPeace National Centers of New England is named as a defendant." (R. 239.) KidsPeace National Centers of New England (i.e., KidsPeace) is a subsidiary of KidsPeace Corporation, (R. 374), and it emerged that other affiliates of the Corporation have been and/or are defendants in litigation, (*see* R. 516). However, the Review Team did not reduce their score based on the arguable incompleteness of the disclosure.

Families United argues that KidsPeace's initial disclosure was incomplete and its score should have reflected that, because the RFP provided, "[f]ailure to provide information requested in this RFP will, at the very least, result in a lower rating for the incomplete sections and may result in the proposal being disqualified for consideration." (R. 26.) The Appeal Panel considered KidsPeace's attachment cataloguing litigation involving *other* KidsPeace affiliates, and concluded: "It was not unreasonable for the Review Team to determine that KidsPeace's response satisfied the RFP. Moreover, litigation disclosure was not one of the pass/fail requirements of the RFP." (R. 594.) It also noted that, even had the response been inadequate, the Review Team reserved the discretion to "waive minor informalities and irregularities." (R. 22, 594.)

9

Second, the RFP required several "Signed Assurances for compliance with State and Federal requirements." (R. 32.) Appendix A contained "Required Forms," one of which was Rider G, "identification of country in which contracted work will be performed." (R. 42, 45.) Written instructions to the Review Team directed it to determine at the outset whether bidders satisfied the "pass/fail" requirements. (R. 445.) KidsPeace's proposal failed to include the Rider G form, but the Review Team did not disqualify it or reduce its score because of it.

Families United argues that KidsPeace should have been disqualified for its failure to include the Rider G form, as it was a "pass/fail" requirement and other bidders were disqualified for seemingly de minimis "pass/fail" oversights, such as using the wrong font size. (Pet. Br. 8-10.) The Appeal Panel concluded that Rider G was not an "assurance" to begin with, and was thus outside the scope of the required forms subject to "pass/fail" treatment. (R. 592-593.) Unlike "Attachment 2: Assurances," by way of comparison, it did not have a signature line and was neither labeled nor in the nature of an assurance relating to compliance with State and Federal requirements. Even had the Rider G been required, the Review Team reserved the discretion to "waive minor informalities and irregularities." (R. 22, 593.)

The Court, thus, concludes that the Review Team's approach to the litigation disclosure and Rider G requirements, and the Appeal Board's validation thereof, was reasonable.

*IV.    The mathematical cost score*

Families United argues that the mathematical formula used to calculate the bidders' cost scores was fundamentally unfair because it "rewarded any proposal that

10

contained unrealistic and/or intentionally low estimates of cost," which it asserts was the case with KidsPeace's proposal. (Pet. Br. 14.) Again, the lowest bidder automatically got 25 out of 35 possible points in terms of cost scoring, with the higher bidders receiving proportionally fewer points in comparison to the lowest bid. (R. 27.)

It is certainly in the State's best interest to secure a bidder with a low relative price tag. In fact, the regulations require that any RFP include a minimum 25% weight attached to cost. 18-554 C.M.R. ch. 110, § 2(A)(i)(aa). As the cost factor is a pure issue of numbers, awarding points proportionally based on a straightforward mathematical formula is a reasonable and fair approach. As to Families United's position that the travel expenses listed by KidsPeace were understated, that is a separate issue from the mathematical formula itself. In any case, the successful bidder will be bound by its cost proposal. Thus, the Court concludes that the mathematical cost formula was not inherently flawed and fundamentally unfair or otherwise infirm.

*V.    Other*

In order to attain performance goals, the RFP included a section labeled "Measuring Outcomes," which required bidders to propose methods for measuring their program's success and effectiveness. (R. 31.) Families United submitted a model called the "North Carolina Family Assessment Scale for Reunification," but placed this in the RFP section labeled "Performance Indicators – Desired Consumer Outcomes." (R. 126.) The Review Team reduced Families United's score for having "no good evaluation tools." (R. 529.)

Families United argues that this reduction was unfair, unsupported by substantial evidence on the record, and arbitrary and capricious because it submitted the detailed

11

North Carolina tool. (Pet. Br. 14.) Team leader Mosca testified that they debited Families United's score because the evaluation tool did not account for families unwilling to participate in the reunification program, and there was no effective tool beyond "tracking and records." (Tr. 291-292.) Further, as the Appeal Panel found, (R. 597), there was competent evidence that Families United failed to comply with the RFP by placing its evaluation tool in the "Performance Indicators" section, not the "Measuring Outcomes" section. Thus, the Court concludes the record supports the Review Team's deduction.

Families United also challenges various recordkeeping practices of the Review Team. For one, it complains that the proposal evaluation forms, which contained a summary of the points awarded for each proposal, were unsigned, even though there was a place for a signature. (Pet. Br. 14-15.) Additionally, it complains that the scoring pages, breaking down the Review Team's consensus scoring by category, were unsigned and failed to identify the particular bidder being scored. (Pet. Br. 15.) Thus, Families United claims, "it is impossible to correlate the bidder with the scoring sheets." *Id.*

There is nothing in the rules that requires a note-taker's signature or other identifying material. The regulations simply require that the Review Team "shall document the scoring, [and] substantive information that supports the scoring," 18-554 C.M.R. ch. 110, § 3(A), and that "[w]ritten records must be kept by each person reviewing or ranking proposals," *id.* § 3(A)(iii). Furthermore, as the Appeal Panel found, (R. 597), there was competent evidence linking each different proposal to the correct bidder, (Tr. 176-180, 279-282). Thus, the Court concludes that the Review Team's recordkeeping practices were sound.

12

The entry will be:

The Court AFFIRMS the Department's award of the contract to KidsPeace.

3/22/12

**DATE**                                    **SUPERIOR COURT JUSTICE**

13

F

| | |
|---|---|
| Date Filed _7/8/11_ | Kennebec<br>County     Docket No. _AP-11-38_ |

Action _Petition For Review_            **J. Murphy**
           80C

(re: Penobscot & Piscataquis)      KidsPeace National Centers (Intervenor)
Families United of Washington County      Commissioner, DHHS
           vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Jay P. McCloskey, Esq.<br>27 Bellevue Avenue<br>Bangor, ME  04401 | N. Paul Gauvreau, AAG<br>6 State House Station<br>Augusta, ME  04333-0006<br><br>- Bryan Dench, Esq.   (Intervenor)<br>Michael Malloy, Esq.<br>95 Main Street<br>Auburn, Maine 04210 |

| Date of Entry | |
|---|---|
| 7/14/11 | Petition For Review Of Final Agency Action, filed 7/8/11.  s/McCloskey, Esq |
| 7/14/11 | Entry of appearance, filed 7/13/11.  s/Gauvreau, AAG (for DHHS) |
| 7/18/11 | Letter entering appearance, filed. s/Dench, Esq. |
| 8/8/11 | Respondent's Motion for Extension of Time to File Administrative Record, filed. s/Gauvreau, AAG<br>Proposed Order, filed. |
| 8/10/11 | ORDER, Murphy, J.  (8/9/11)<br>The Respondent's Motion for Extension of Time is GRANTED,  Respondent is ordered to file the administrative record on appeal no later than 8/22/11.<br>Copy to attorneys of record. |
| 8/15/11 | Certified Copy of Administrative Record, filed. s/Gaureau, AAG |
| 8/24/11 | Notice And Briefing Schedule issued, mailed to attorneys of record. |
| 8/29/11 | Original Certificates of transcribers for hearing transcript; copies of statutes and regulations, filed 8/23/11.  s/Gauvreau, AAG |
| 10/5/11 | Petitioner's Memorandum In Support of 80C Appeal, filed 10/3/11.<br>s/McCloskey, Esq. |
| 10/26/11 | Brief of Party-in-Interest KidsPeace National Centers of New England, Inc., filed.  s/Malloy, Esq. |
| 11/2/11 | Brief Of Respondent Department Of Health And Human Services, filed 11/1/11.<br>s/Gauvreau, AAG |
| 11/17/11 | Petitioner's Reply Brief, filed 11/14/11.  s/McCloskey, Esq. |
| 2/2/12 | Oral argument scheduled for 3/8/12 at 10:30 a.m.<br>List mailed to attorneys of record. |